1
2
3
4
5
6
7
8              **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  LYNETTE F. ORTEZ,                          No. CIV S-10-2096-CMK

12              Plaintiff,

13        vs.                                    <u>ORDER</u>

14  COMMISSIONER OF SOCIAL
    SECURITY,
15
                Defendant.
16  _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18  review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20  judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

21  before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-

22  motion for summary judgment (Doc. 18).  For the reasons discussed below, the court will deny

23  plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion

24  for summary judgment.

25  / / /

26  / / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on October 29, 2002, alleging an onset of disability on April 1, 2001, due to disabilities including lumbar disc disease, crushed ankles, asthma, dyslexia, depression and anxiety disorder.  (Certified administrative record ("CAR") 44, 82, 96-105).  Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on July 6, 2004, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.  In a July 22, 2004, decision, ALJ Acevedo-Torres concluded that plaintiff was not disabled.  Plaintiff requested the Appeals Council review the ALJ's unfavorable decision.  The Appeals Council vacated the ALJ's decision, and remanded the matter for a new hearing with specific instructions.  A supplemental hearing was held on September 15, 2005, before ALJ Mark C. Ramsey.  In a March 7, 2006, decision, ALJ Ramsey also concluded that plaintiff was not disabled.  The Appeals Council denied plaintiff's request for review on July 20, 2006.  Plaintiff then filed a timely action for judicial review in this court.  On July 13, 2007, the undersigned determined that the ALJ failed to adequately support his credibility finding related to both plaintiff's testimony and that of her sister, and that the ALJ erred in relying, at least in part, on the Medical Vocational Guidelines (Grids).  The court remanded the matter to the Commissioner for further consideration (case number 2:06-cv-1748-CMK, "*Ortez I*").

On remand, the Appeals Council vacated the final decision of the Commissioner, and instructed the ALJ to conduct further proceedings consistent with this court's order, and instructed the ALJ to offer plaintiff the opportunity for a hearing, take further action as needed to complete the administrative record, and issue a new decision.  (CAR 590).  A further supplemental hearing was held on October 11, 2007, before ALJ  Ramsey.  In a March 25, 2008,

---

[1]    Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

decision, ALJ Ramsey again concluded that plaintiff was not disabled[2] based on the following findings:

> 1. The claimant has not engaged in substantial gainful activity since October 29, 2002, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments:  affective disorder, anxiety disorder, personality disorder, and degenerative lumbar disk disease  (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

/ / /

---

[2]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(c) except she is limited to simple, unskilled work where she must be given precise instructions with no work with the public or work in unison with other employees, though she can work in the presence of other employees.

5.    The claimant has no past relevant work (20 CFR 416.965).

6.    The claimant was born on October 24, 1958 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c), and 416.966).

10.   The claimant has not been under a disability, as defined in the Social Security Act, since October 29, 2002, the date the application was filed (20 CFR 416.920(g)).

(CAR 579-87).  After the Appeals Council denied further review on April 13, 2010, this appeal followed.

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

1  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

2  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

3  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

4  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

5  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

6  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

7  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

8  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

9  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

10  Cir. 1988).

11  ### III.  DISCUSSION

12       Plaintiff argues the ALJ erred in three ways:  (1) the hearing decision did not

13  follow the prior remand instructions from this court; (2) the ALJ's credibility analysis of plaintiff

14  and her third party witness was legally flawed; and (3) the ALJ improperly discounted the reports

15  and medical records from plaintiff's treating psychiatrist.

16  ### A.    REMAND INSTRUCTIONS

17       Plaintiff argues the decision currently under review failed to follow the remand

18  instructions from this court following review of the prior decision.  Specifically, plaintiff

19  contends that ALJ failed to properly credit the witness testimony, and erroneously relied on the

20  Grids, at least in part, as specifically instructed not to do.

21       In the prior opinion from *Ortez I*, the court found "that the ALJ did not rely on

22  substantial evidence when he discounted the testimony of plaintiff and her sister Lacey

23  concerning plaintiff's mental health limitations."  (*Ortez I*, 06-cv-1748, Doc. 21, at 7).  The court

24  determined "[t]he ALJ erred by failing to properly credit the testimony of plaintiff regarding her

25  physical limitations and the testimony of plaintiff and her sister regarding plaintiff's mental

26  limitations."'  (Id.).  There were no specific instructions provided in the court's order as to the

1   proper treatment of the plaintiff and her witness's testimony.  Rather, the credibility

2   determination was found to be unsupported, and the case was remanded for further consideration.

3   The ALJ held a new hearing and addressed the credibility of both plaintiff and her sister in a new

4   decision.  That credibility determination is discussed below.  However, to the extent plaintiff

5   argues the ALJ failed to follow the remand order, the undersigned finds no error.

6           In addition, the court determined the ALJ erred by using the Grids as a framework

7   in making his residual functional capacity (RFC) determination, even though a vocational expert

8   (VE) testified at the supplemental hearing.  The ALJ was specifically directed to refrain from

9   using the Grids in determining if plaintiff can perform work in the national economy, and to

10  solely use the testimony of a VE.  In the current decision, contrary to plaintiff's argument, the

11  ALJ did as ordered and did not utilize the Grids in making his determination.  Rather, the ALJ set

12  forth the standards used to make such a determination.  He then specifically stated that "[b]ased

13  on the testimony of the vocational expert, the undersigned concludes that, considering the

14  claimant's age, education, work experience, and residual functional capacity, the claimant has

15  been capable of making a successful adjustment to other work that exists in significant numbers

16  in the national economy." (CAR 587).  Other than the requirement that the ALJ not utilize the

17  Grids, there was no specific remand direction regarding the VE's testimony.   Thus, the court

18  finds the ALJ also followed this portion of the remand order and did not utilize the GRIDS.  No

19  error is found.

20          **B.      MEDICAL OPINIONS**

21          Plaintiff also argues the ALJ erred in his treatment of Dr. Ignatowicz's opinion,

22  her treating psychiatrist.  Dr. Ignatowicz opined that plaintiff was markedly limited in most

23  categories, except those related to simple instructions and tasks, where she is moderately limited.

24          The weight given to medical opinions depends in part on whether they are

25  proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

26  821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

1  professional, who has a greater opportunity to know and observe the patient as an individual,

2  than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

3  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given

4  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

5  (9th Cir. 1990).

6          In addition to considering its source, to evaluate whether the Commissioner

7  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are

8  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

9  uncontradicted opinion of a treating or examining medical professional only for "clear and

10 convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

11 While a treating professional's opinion generally is accorded superior weight, if it is contradicted

12 by an examining professional's opinion which is supported by different independent clinical

13 findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

14 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be

15 rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,

16 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of

17 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

18 finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

19 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

20 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

21 without other evidence, is insufficient to reject the opinion of a treating or examining

22 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

23 conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

24 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

25 see also Magallanes, 881 F.2d at 751.

26 / / /

1      In this case, there are several medical opinions and evaluations.  These medical
2  opinions, including plaintiff's treating and examining doctors, were somewhat inconsistent with
3  each other, creating a conflict the ALJ necessarily had to resolve.   Dr. Ignatowicz's assessment
4  of plaintiff was severely limiting.  The treatment records from Dr. Ignatowicz, however, indicate
5  that plaintiff was stable, her schizo-affective disorder was in remission, and while she continued
6  to have some anxiety and depression with some breakthrough symptoms, she was stable overall
7  (CAR 650-714).  In contrast, one examining psychologist determined plaintiff had only mild
8  disorders and was capable of performing even detailed and complex tasks and interacting with
9  others (CAR 280-86).  Another examining physiologist found plaintiff has the ability to carry out
10  and understand only simple instructions and tasks with supportive supervision (CAR 369-78).
11  An examining psychiatrist found plaintiff has moderate to severe difficulty in interacting with
12  others, dealing with complex job instructions and maintaining concentration, as well as moderate
13  difficulty with simple job instructions and tasks (CAR 419-20).

14      To help resolve the conflicting medical opinions, the ALJ consulted with and
15  utilized the testimony of a medical expert, Dr. Walter, who offered his opinion and analysis of
16  the medical evidence.  Dr. Walter reviewed plaintiff's medical records and evaluations, listened
17  to plaintiff's testimony, and opined that plaintiff was limited in her abilities relating to detailed
18  tasks, but is able to complete simple, unskilled work if adequately instructed.  Dr. Walter also
19  opined that plaintiff was limited in her abilities to interact with others.

20      In resolving the conflicting medical opinions, the ALJ relied on the opinion of the
21  testifying medical expert, Dr. Walter.  The ALJ stated:

22          Dr. Walter based his assessment on the record as it existed at the time of
            his earlier testimony, in September of  2005.  Although the expert's most
23          recent testimony indicated that the claimant's personality disorder had
            somewhat worsened over the past two years, he nevertheless testified that
24          the record does not show the claimant's total dysfunction in a work
            situation and his testimony otherwise did not indicate more than moderate
25          limitations in the respective areas of functioning.

26  (CAR 582).

The ALJ further explained:

> At the supplemental hearing Dr. Walter testified that there has been a worsening in the claimant's personality disorder, which has become more dependent on someone to direct her.  In a work situation she'd have to be told exactly what to do and shown a demonstration allowing her to do simple activities.  She has become more passive dependent since 2005 and before.  She would not be able to work well with the public either.  She would have anxiety when she works with others and could not work in a team situation.  She could not work in unison with others but could work in the presence of others though.  She could do simple unskilled work if she was told exactly what to do.

(CAR 583).

In addition, the ALJ offered the reasons he did not entirely credit the opinions of other consulting or treating providers:

> The May 2003 assessment from the consulting examining psychologist finding the claimant capable of detailed and complex tasks and interacting with the public and coworkers is beyond her limited mental capacity and to that extent is not credited (Ex. 6F/7).  The April 2004 psychological assessment, finding her limited to simple instructions and tasks and requiring patient and supportive supervision, is well supported by the claimant's low I.Q. scores and the record generally and is credited (See, Ex. 15F).  Psychiatric examiner Dr. Cheema's assessment is generally credited with respect to the claimant's limitations interacting with the public, supervisors, and coworkers, and her significant limitations with respect to complex job instructions (Ex. 18F).  The undersigned accords significant weight to Medical Expert Dr. Walter's medical source statements, which have formed the basis for the mental residual functional capacity found here.  However, the assessment from treating psychiatrist Dr. Ignatowicz, finding her "markedly limited" in her ability to maintain extended concentration, maintain regular attendance, work in coordination with others, get along with coworkers, etc., lack substantial support either in Dr. Ignatowicz's own clinical records or the record as a whole.  Further, the form used by the doctor is a Social Security form that is used by program physicians in arriving at mental residual functional capacity assessments and is not intended for use by private practitioners.  Simply checking the "marked" boxes on a form does not reasonably cause the claimant to no longer have the mental capacity for the various work functions identified - particularly in view of Dr. Ignatowicz's own contrary progress records demonstrating that the claimant was stable and otherwise functioning considerably better than the physician's assessment would indicate.

(CAR 585).

/ / /

/ / /

1    As the medical opinions were in conflict, the ALJ was required to provide

2    legitimate reasons for resolving the conflict.  Plaintiff argues that the ALJ took Dr. Ignatowicz's

3    statements out of context in supporting his determination.  However, a review of Dr.

4    Ignatowicz's treatment notes supports the ALJ's assessment.  Specifically, throughout 2006 and

5    2007, Dr. Ignatowicz notes indicate that while plaintiff did indeed require a very high dosage of

6    medication (it is noted the amount given is in excess of the recommended dose), plaintiff was

7    stable, with no acute psychological complaints, for most of that time.  In fact, it was noted

8    several times that plaintiff's schizo-affective disorder was in remission.  (See CAR 669-699).

9    The ALJ's determination was supported by the examining medical opinions as well as the non-

10   examining medical expert. Thus, in rejecting Dr. Ignatowicz's contradicted opinion, the ALJ

11   provided specific and legitimate reasons which are supported by substantial evidence.

12   **B.    CREDIBILITY**

13   Finally, plaintiff contends that the ALJ again erred in his credibility determination

14   as to her testimony and that of her sister.

15   The ALJ found that plaintiff's "medically determinable impairments could

16   reasonably be expected to produce the alleged symptoms; however, [her] statements concerning

17   the intensity, persistence and limiting effects of these symptoms are not credible . . . ." (CAR

18   584).  As for plaintiff's physical problems with her feet and balance, the ALJ noted  the lack of

19   medical treatment, and conservative treatment following surgery on her ankles prior to filing her

20   current application.  In addition, the ALJ noted the lack of corroborating objective medical

21   evidence, including the demonstration of a normal gait and no problems with standing, walking

22   or sitting during physical examinations.  The ALJ took into consideration her degenerative

23   lumbar disc disease in arriving at a light RFC.  "Despite her assertions that she cannot be on her

24   feet for more than brief periods, or about 15 minutes, or that she otherwise cannot sustain the

25   limited demands of light exertional work activity, the substantial evidence here demonstrates

26   otherwise and thus she cannot be credited." (CAR 585).

1   The Commissioner determines whether a disability applicant is credible, and the

2   court defers to the Commissioner's discretion if the Commissioner used the proper process and

3   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

4   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

5   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

6   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

7   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

8   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

9   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

10  1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

11  and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

12  If there is objective medical evidence of an underlying impairment, the

13  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

14  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

15  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

16          The claimant need not produce objective medical evidence of the
        [symptom] itself, or the severity thereof.  Nor must the claimant produce
17      objective medical evidence of the causal relationship between the
        medically determinable impairment and the symptom.  By requiring that
18      the medical impairment "could reasonably be expected to produce" pain or
        another symptom, the Cotton test requires only that the causal relationship
19      be a reasonable inference, not a medically proven phenomenon.

20  80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799

21  F.2d 1403 (9th Cir. 1986)).

22  The Commissioner may, however, consider the nature of the symptoms alleged,

23  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

24  947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

25  claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

26  testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

1   prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

2   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

3   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

4   claimant cooperated during physical examinations or provided conflicting statements concerning

5   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

6   claimant testifies as to symptoms greater than would normally be produced by a given

7   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

8   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

9            Here, the ALJ did not entirely discredit plaintiff's testimony or that of her sister.

10   The ALJ took into consideration some limitations related to plaintiff's back and ankle issues, as

11   evidenced by the light RFC determination.  As far as the ALJ discredited plaintiff's testimony

12   that she is limited to only 15 minutes of walking, he supported that decision with a discussion of

13   the conservative treatment plaintiff received following her ankle injury in 2001 or 2002, as well

14   as the lack of on-going treatment.  In addition, during the consultative physical examination

15   plaintiff underwent in 2003, the examining physician noted plaintiff did wear a back brace and

16   ankle brace, but had a normal gait, negative Romberg, and no problems getting on or off the

17   examination table.  She did have some limited range of motion in her back, and slight limitation

18   in the right ankle, but opined no limitations in the number of hours she could be expected to

19   stand, walk or sit (CAR 288-89).  Also supportive of the ALJ's determination, plaintiff's daily

20   activity questionnaire and third party function report her sister completed, both indicate that

21   plaintiff took walks frequently, and asserted no limitations thereon (CAR 110-30).  This differed

22   from the testimony provided at the hearing, thus providing an inconsistency for the ALJ.

23            The undersigned finds no error in the ALJ's credibility determination.  The ALJ

24   provided specific reasons for not fully crediting plaintiff's testimony, which is supported by

25   substantial evidence.  While the evidence before the court is susceptible to more than one rational

26   interpretation, the ALJ's decision is supported by substantial evidence, no improper standard was

1  applied, and the decision must therefore be affirmed.  See Thomas v. Barnhart, 278 F.3d 947,

2  954 (9th Cir. 2002).

3                                    **IV. CONCLUSION**

4          Based on the foregoing, the court concludes that the Commissioner's final

5  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

6  ORDERED that:

7          1.      Plaintiff's motion for summary judgment (Doc. 15) is denied;

8          2.      Defendant's cross-motion for summary judgment (Doc. 18) is granted; and

9          3.      The Clerk of the Court is directed to enter judgment and close this file.

10

11  DATED:   August 23, 2012

12

13                                             **CRAIG M. KELLISON**
                                               UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26